**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.:**

**SNAG, INC., a**
**Florida corporation,**

       **Plaintiff,**

**vs.**

**JON P. GREEN, an individual and**
**HOME ON THE RANGE, INC., a**
**California corporation,**

       **Defendants.**

_____/

## COMPLAINT

Plaintiff, SNAG, INC. ("SNAG®" or "Plaintiff"), hereby sues Defendants, JON P. GREEN ("MR. GREEN") and HOME ON THE RANGE, INC. ("HOTR") (collectively referred to as "Defendants") for defamation, libel per se and tortious interference and alleges:

### PARTIES, JURISDICTION AND VENUE

1.      This is an action for trademark infringement in violation of §32 of the Lanham Act, 15 U.S.C. §1114, false designation or origin under §43(a) of the Lanham Act, 15 U.S.C. §1125(a) as well as defamation and libel per se under Florida law.

2.      This Court has subject matter jurisdiction over the trademark infringement and false designation of origin claims under 28 U.S.C. §1338(a) and over the defamation and libel per se claims under 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

3.     This Court has personal jurisdiction over Defendants because (1) as alleged in ¶¶'s22-29 below, Defendants directly and purposefully reached into the State of Florida and the Southern District of Florida when they made false and defamatory statements about Plaintiff, a Florida Corporation; (2) Such false and defamatory statements were accessible and in fact accessed in Florida by Jack Nicklaus and the Nicklaus companies who are both located in this District; (3) Plaintiff and its business relationships were harmed in the State of Florida and the Southern District of Florida; (4) Defendants infringed on Plaintiff's trademark and created a false designation of origin on Defendants' website and Facebook® page, which are both accessible in the State of Florida as well as on Jack Nicklaus' Facebook® page which is accessible and was in fact accessed in this District; (5) Plaintiff's cause of action arises directly from Defendants' unlawful activities in this District; and, (6) Defendants have sufficient minimum contacts with the State of Florida.

4.     Venue is proper in the Southern District of Florida under 28 U.S.C. §§1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims contained herein accrued in West Palm Beach, Florida.

5.     Plaintiff, SNAG, INC. is a Florida corporation duly incorporated under the laws of the State of Florida.

6.     Upon information and belief Defendant, JON P. GREEN, is an individual residing in the state of California at 11110 Tahoe Street, Auburn, California 95602.

7.     Defendant, HOME ON THE RANGE, INC. is a California corporation with its principal place of business located at 671 Newcastle Road, Newcastle, California 95658.

## BACKGROUND

8.      SNAG® ("Starting New at Golf") is a company that originated in 1995 by two PGA Tour Professionals, Terry Anton and Wally Armstrong.  At the time, Mr. Armstrong had become famous for developing golf's first instructional infomercial for his clever use of products aimed at developing golf skills.  Mr. Anton was one of the original founders of the American Junior Golf Association and had experience in course design and operations having run Hale Irwin Golf Services.

9.      From 1995 to 2001, countless hours were invested researching the best "first touch" methods in a diversity of sports.  Mr. Anton interviewed and studied professionals and their learning progressions in baseball, basketball, football, tennis, even the martial arts, in order to break down the best way to impart the skills needed to teach golf in the most basic and effective way.  Mr. Armstrong's reputation for developing various non-golf related objects into training tools to demonstrate various aspects of golf instruction led to skill specific programming.  The use of these training tools became an integral part of SNAG's® curricula.

10.      Mr. Anton also analyzed proven scientific research as a roadmap to designing SNAG's® equipment and proprietary instructional methods, so as to ensure simplicity of understanding for everyone.  The most efficient colors and word cues were tested.  This was accomplished by collaborating with the most prominent university minds in U.S. physical education.  In short, the goal of SNAG® Golf was to create a learning environment that is accessible to everyone and that can be played almost anywhere.

11.     The golf-related objects and instruction tools were offered for sale starting in 2001 and were offered to both individuals as well as to professionals to be used to instruct others. Examples of the products and kits sold by SNAG® are attached hereto as Exhibits "A" and "B." One can purchase the products as an individual (Exhibit "A") or as an instructor (Exhibit "B"). In both cases, the "Paks" include, a launcher, roller, launch pad, flagsticky, balls and a carry bag, which are all used to build strong fundamentals for rolling, chipping, pitching and launching.  If you purchase the "coaching kit," you also receive various training tools, an instruction manual and an instruction video with SNAG's® proprietary instruction methods.

12.     Since 2001, SNAG® has been partnering with several hundred YMCA's and parks across the county to introduce its products and training methods to children.  In 2002, SNAG® launched a pilot program to introduce its developmentally appropriate equipment and a turnkey curriculum that met U.S physical education standards to schools all across the U.S.  Its immediate success involving 30,000 children from the Chicago public schools allowed SNAG® to partner with The First Tee in October of 2003 to license their skills acquisition component and expand into schools nationally.

13.     In its early years, SNAG® was mistaken as a toy or kids-only game and too often it was dismissed as a serious learning tool for a complex sport.  Tireless promotion and explanation of the SNAG® system and its applications have spanned a decade and the SNAG® program has captivated golf enthusiasts in 42 countries.  The inventive and innovative program now boasts a presence in some 8,000 international schools, a partnership with the World Golf Foundation's First Tee, a presence in the most prestigious golf academies, availability at golf and

country clubs, parks and recreational facilities, senior centers and retirement communities, and in outreach rehabilitation efforts to individuals with disabilities.

14.   SNAG® has also been involved with the National Recreation and Parks Association since 2009 with the development of its G-Ball program.   G-Ball can best be described as golf's version of T-Ball, focused on children 5 to 8 years old.   It is being conducted by parent-coaches on soccer fields and selected open space within municipal facilities.   G-Ball is being used to educate the next generation of golfers so that millions of children will learn to play golf in our parks.   The purpose of G-Ball is to bring golf into mainstream team sports through Parks and Recreation Facilities.

15.   Since at least as early as December of 2000, SNAG® has used its SNAG® word mark in commerce in association with the sale of golf-related items.   On February 10, 2010, Plaintiff filed a federal trademark application for its SNAG® word mark for "equipment for golf-like game sold as a unit primarily composed of golf balls, golf clubs, golf bags, targets, helmets, golf tees and golf mats" in Class 028, which was registered on the Principal Register on April 5, 2011 (Registration No. 3939700).   A true and correct copy of the Trademark Registration is attached hereto as Exhibit "C."

16.   Since at least as early as January of 2002, SNAG® has used its SNAG® logo in commerce in association with golf-related items.   On October 2, 2001, Plaintiff filed a federal trademark application for its SNAG® logo, as seen here



For "equipment for golf-like game sold as a unit, namely, balls, clubs, bags, targets, helmets, tees and mats" in Class 028, which was registered on the Principle Register on August 10, 2004 (Registration No. 2872151).  A true and correct copy of the Trademark Registration is attached hereto as Exhibit "D."

17.     In September of 2011, a sales representative for SNAG®, Kelly McCammon, contacted Jack Nicklaus and the Nicklaus companies explaining how SNAG is currently being used in elementary schools, golf courses and parks all around the world.  Ms. McCammon, further stated that she knew that Mr. Nicklaus was working on modified equipment for the parks and that SNAG has been doing this for the past 10 years.  A representative for the Nicklaus companies responded stating that they are looking to develop a Parks and Recreation model for golf including equipment, balls and temporary practice greens, so this would be a good time to discuss your ideas.

18.     The discussions between SNAG® and Jack Nicklaus continued and after reviewing numerous formal and information proposals, in March of 2012, Nicklaus and SNAG® officially decided to work together to create some 300 Jack Nicklaus Learning Leagues in city parks and recreation departments all across the country.

19.     In December 7, 2012, there was an article in the Wall Street Journal online announcing the new golf learning leagues being put on by Jack Nicklaus and SNAG®.  A true and correct copy of the article is attached hereto as Exhibit "E."

20.     The publication of this article prompted Defendant, HOTR, through the participation, direction, control and with the actual knowledge of MR. GREEN to begin their attack on Plaintiff through numerous false and defamatory accusations that Plaintiff stole Defendants' idea to create golf leagues utilizing the SNAG® equipment and that Plaintiff was allegedly trying to take all of Defendants' SNAG® equipment.

21.     Defendants operate a teaching facility in California utilizing Plaintiff's products to teach children the sport of golf.  As part of the teaching facility, Defendants allegedly offer some sort of golf league.

22.     Shortly after the article was published, Defendant, HOTR and MR. GREEN as an officer and director of HOTR and through his direction and control began attacking both SNAG® and Jack Nicklaus on MR. GREEN's personal Facebook® page, on Jack Nicklaus' Facebook® page and through private messages to Jack Nicklaus, falsely alleging that Defendants were the ones that "created" the idea of using SNAG®'s products to teach golf through golf leagues and that Plaintiff stole his idea and that Plaintiff was attempting to take all of Defendants' SNAG® equipment.  MR. GREEN was the moving force behind all such false accusations.

23.     Examples of the false and defamatory statements made by Defendants and published to a third party (i.e. the public via MR. GREEN and Jack Nicklaus' Facebook page

and Jack Nicklaus via private messages) are attached hereto as Exhibit "F" and referenced below:

"**Jack, the SNAG company is trying to take all my SNAG equipment from me.** They sent this guy in saying he was the west coast rep for SNAG and that they were taking all my SNAG equipment. **I think that is really crappy for a company to try to take equipment out of children's hands.** I am currently running a SNAG golf league for 3rd through 8th graders at 15 elementary and middle schools and SNAG wants to take my equipment out of kids hands. **I used to think that the SNAG company had integrity but now I think differently about them. If you have your attorney's look up what I have done with junior golf over the last 21 years, they will see who is real and who is taking someone else's ideas and calling them their own. They can not re write history as hard as they are trying.**"

"A big congratulation to Jack Nicklaus and SNAG golf. **It should be interesting to see how far they get trying to implement a program they took from someone else**."

"**If SNAG did not have this to bring to Jack more than 18 months ago, it is because they took my program and brought it to you**."

".....**Thank you very much for giving the guy credit who has been doing it for twelve years now and built, owns and operates the first and still only SNAG golf course in the world.**"

"Please do not mistake my kindness for weakness. **If you take something from me without asking I will fight with all my might to get it back. (Or at minimum receive credit for the idea)**. I am 45 years old and been in the golf industry for twenty seven years. I taught my first junior class at age 18 with my Uncle at Bing Maloney GC in Sacramento (my payment was two dozen titlist balata 100's). It was then that I had a good indication of what I would do with the rest of my life. Teach golf to juniors. Seven years later Home on the Range was built and I was on my way and have been developing junior golf programs ever since. Point is I have been in this industry too long to let anyone intimidate me or take from me what is mine and present it as theirs. **I will do whatever it takes to claim recognition for a program which I have been doing since 2001 and have documentation and photos to prove it. All I asked for was recognition for a program I not only currently run but developed, presented and even won an award for.** Oh, and don't mistake me for a man with anything to loose. As us country boys have always known, never wrestle with a pig because you both get dirty and the pig loves it. Oink, Oink, All in."

"A big congratulation to Jack Nicklaus and SNAG golf.  **It should be interesting to see how far they get trying to implement a program they took from someone else.**  If they think that they can just offer a low cost golf program and kids will be flocking to join.....they obviously haven't ever implemented it.  The amount of back and forth work, fingerprinting, and having parents trust you with their children doesn't happen over night.  My goal is to keep my program which is sponsored by myself, far ahead of what they can accomplish with all Jack's funding.  Maybe in a year or two, when they have only little to show for all their time and money, they will begin to realize having a program and equipment is only part of what makes my junior program so successful."

"**I wonder how the Nicklaus Learning Leagues are getting their programs up and running?  Amazing that a junior golf program that some people claim has never been done before, continues to be done year after year in the Auburn area.  Maybe I do not exist and the juniors in my programs do not exist and the schools and the recreation departments do not exist.  I know I might be pushing this but it is upsetting when persons I respected in the golf industry try to say these leagues have not been done before just to sell themselves.**"

"Just wanted people to see that these leagues were up and running prior to any Jack Nicklaus Learning League.  **It is a shame that in a sport in which its professionals monitor and call penalties on themselves, I am having to fight for credit of the program I developed, presented and implemented previous to anyone else.  Learn the rules or get the heck out of this industry until your ethics improve**!

24.     Defendants did not "invent" the idea of using SNAG's® products to teach golf as this is the very purpose of the SNAG® products.  In fact, SNAG® has promoted its products as such and provided instruction manuals and training videos to aid professionals, instructors and teachers in utilizing the products in this very manner.  SNAG® has also worked with public schools and parks and recreational facilities in an effort to create golf leagues utilizing SNAG's® golf-related equipment far before Defendants.

25.     Further, Defendants' do not have "the only SNAG golf course in the world" and at no time did Plaintiff's attempt to "take all of Defendants' SNAG equipment" from him.

9

26.     Each of these statements is not only completely false, but they were made by Defendants with spite or ill will or with a desire to do harm to Plaintiff for Defendants' own sake.   Defendants' intent was clearly improper based on the fact that Defendants were purposefully interfering with the business relationship between SNAG® and the Nicklaus Companies for Defendants' own benefit.   Such statements, at the very least, were made with reckless disregard as to the truth or falsity of the statements, or in conscious ignorance of their truth.

27.     Defendants' statements about Plaintiff "taking his idea" and the fact that he "used to think that the SNAG company had integrity but now I think differently about them" has exposed Plaintiff to distrust, contempt, ridicule and has injured Plaintiff's business by falsely alleging dishonest business practices to one of Plaintiff's business partners, Jack Nicklaus and the Nicklaus companies.

28.     Such statements were published to a third party (any and all "friends" on MR. GREEN's Facebook® page and Jack Nicklaus' Facebook® page) as well as to Jack Nicklaus himself.

29.     Such statements were accessible and were in fact accessed by Jack Nicklaus and the Jack Nicklaus companies, which are located in West Palm Beach, Florida.

30.     Such statements have damaged Plaintiff's reputation by accusing Plaintiff of dishonest business practices.

31.     Such statements were made willfully with malicious intent supporting an action for punitive damages under Florida law.

32.     On February 4, 2013, Plaintiff sent a cease and desist letter to MR. GREEN requesting that he cease making such false and defamatory statements.  A true and correct copy of the letter is attached hereto as Exhibit H.

33.     Plaintiff attempted to resolve this matter with MR. GREEN via telephone and email, but it was clear that resolution was not possible after MR. GREEN demanded payment in the amount of $30,000 in the form of a Grant to various organizations as well as threatened to post the lawsuit on the Internet as well as sending a copy to Jack Nicklaus, The PGA of America and The Golf Course Owners Association unless Plaintiff apologized and paid the money.

34.     As part and parcel to Defendants' defamatory statements, Defendant, HOTR through the direction, control and with the actual knowledge of MR. GREEN is also infringing on Plaintiff's trademark and creating a false designation of origin by using Plaintiff's SNAG® word mark and logo on both their website and in their defamatory statements in a misleading and unauthorized manner.

35.     For instance, on December 18, 2012, Defendants published on Jack Nicklaus' Facebook® page the following statement:

**Thank you very much for giving the guy credit who has been doing it for twelve years now and built, owns and operates the first and still only SNAG golf course in the world.**

*See* Exhibit "F."

36.     By stating that Defendants built, owns and operates the first and still only SNAG golf course in the world, Defendants are confusing consumers into believing that SNAG has approved, endorsed or sanctioned Defendants' golf course in some way, when in fact Plaintiff has not.  Although Plaintiff's golf course is an example of how a golf course utilizing SNAG®

equipment could be laid out, Defendants' golf course is not an official SNAG golf course as there is only one official SNAG golf course and it is located in Oklahoma.

37.    Defendants have improperly used Plaintiff's trademarks on its website www.homeontherange.com by implying that Defendants' golf course is a SNAG® golf course by saying "Stop by and Play our –Hole SNAG Course" and by inserting a picture of the golf course with the name of Defendants' company (Home on the Range) right next to Plaintiff's



SNAG® logo:

*See* Exhibit "G."

38.    As users of SNAG® products, Defendants can say that they are using SNAG® products in association with their HOME ON THE RANGE golf course, but they cannot falsely imply that their golf course is a SNAG® golf course because it is not.

39.    Such improper uses by Defendants creates a false designation of origin such that consumers are likely to be confused and believe that Plaintiff has approved, endorsed or

sanctioned Defendants' golf course and/or is in some type of partnership with Defendants when in fact Plaintiff is not.

40.     Plaintiff performed all conditions precedent to be performed by Plaintiff or the conditions have occurred.

41.     Plaintiff has been forced to retain the law firm of Beusse Wolter Sanks Mora & Maire, P.A. for representation in this action.

## Count I
## (Defamation)

42.     Plaintiff, SNAG®, hereby adopts and re-alleges paragraphs 1 through 41 above as fully and completely as if set forth herein.

43.     This is an action for common law defamation against Defendants.

44.     As seen above, Defendant, HOTR, through the direction, control and with the actual knowledge of MR. GREEN have engaged in a pattern of misconduct, including, but not limited to, making false and defamatory statements about Plaintiff's business and its business practices.

45.     Defendants published these false and disparaging statements to third parties on MR. GREEN's Facebook® page, on Jack Nicklaus' Facebook® page and to Jack Nicklaus personally via a private message on Facebook®.

46.     Defendant, MR. GREEN as an officer and director of HOTR directed, controlled, participated in and was in fact the moving force behind these defamatory statements.

47.     Such conduct by Defendants was done purposefully in an effort to injure Plaintiff's business and was done with knowledge and malicious intent or with reckless disregard as to the falsity of the subject statements.

48.     As a direct and proximate result of Defendants' conduct, third persons, specifically, Jack Nicklaus and the Nicklaus Companies have been deterred from dealing with Plaintiffs, which has prejudiced Plaintiff's business in that its goodwill has suffered immensely and the professional reputation of SNAG® has been severely, pervasively, and permanently harmed in the golfing community and will continue to be harmed unless Defendants are permanently enjoined by this Court.

49.     Plaintiff has no adequate remedy at law.

50.     Plaintiff is likely to succeed on the merits of this claim.

WHEREFORE Plaintiff respectfully demands that a permanent injunction be entered against Defendants requiring Defendants to take down all defamatory statements referenced above from MR. GREEN's personal Facebook® page as well as enjoining Defendants from further making any false and defamatory statements against Plaintiff in relation to the Jack Nicklaus Learning Leagues being offered by Jack Nicklaus and SNAG® as well as judgment against Defendants, that awards SNAG® its lost business income and profits and compensation for the injury to its reputation and awards Plaintiff punitive damages to punish Defendants for their willful and malicious conduct and to deter others from engaging in similar misconduct, costs of this action and that provides such other and further relief as the Court deems just and proper.

**Count II**

14

## **(Libel Per Se)**

51.     Plaintiff, SNAG® hereby adopts and re-alleges paragraphs 1 through 41 above fully and completely as if set forth herein.

52.     This is an action for libel per se against Defendants.

53.     As seen above, Defendant HOTR, through the direction, control and with the actual knowledge of MR. GREEN, have engaged in a pattern of misconduct, including, but not limited to, making false and defamatory statements about Plaintiff's business and its business practices.

54.     Defendants published these false and disparaging statements on MR. GREEN's Facebook® page, on Jack Nicklaus' Facebook® page and to Jack Nicklaus personally via a private message on Facebook®.

55.     Such conduct by Defendants was done purposefully in an effort to injure Plaintiff's reputation as a reputable business and was motivated by spite, ill will or bad motive.

56.     Defendant, MR. GREEN, as an officer and director of HOTR directed, controlled, participated in and was in fact the moving force behind these defamatory statements.

57.     Such unfounded statements have exposed Plaintiff to distrust, contempt, ridicule and have injured Plaintiff's business by falsely alleging dishonest business practices by Plaintiff.

58.     As a direct and proximate result of Defendants' conduct, third persons, specifically, Jack Nicklaus and the Nicklaus Companies have been deterred from dealing with Plaintiffs, which has prejudiced Plaintiff's business in that its goodwill has suffered immensely and the professional reputation of SNAG® has been severely, pervasively, and permanently

harmed in the golfing community and will continue to be harmed unless Defendants are permanently enjoined by this Court.

59.     Plaintiff has no adequate remedy at law.

60.     Plaintiff is likely to succeed on the merits.

WHEREFORE Plaintiff respectfully demands that a permanent injunction be entered against Defendants requiring Defendants to take down all defamatory statements referenced above from MR. GREEN's personal Facebook® page as well as enjoining Defendants from making any false and defamatory statements against Plaintiff in relation to the Jack Nicklaus Learning Leagues being offered by Jack Nicklaus and SNAG® as well as judgment against Defendants, that awards SNAG® its lost business income and profits and compensation for the injury to its reputation and awards Plaintiff punitive damages to punish Defendants for their willful and malicious conduct and to deter others from engaging in similar misconduct, costs of this action and that provides such other and further relief as the Court deems just and proper.

### Count III
### (Trademark Infringement)

61.     Plaintiff, SNAG® hereby adopts and re-alleges paragraphs 1 through 41 above fully and completely as if set forth herein.

62.     Section 32 of the Lanham Act, 15 U.S.C. §1114(1)(a), provides in pertinent part that "any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection

with which such use is likely to cause confusion, or to cause mistake, or to deceive…shall be liable in a civil action by the registrant….”

63.     Defendant, HOTR, through the direction, control and with the actual knowledge of Defendant, MR. GREEN, marketed, promoted and sold its golf lesson services through use of the SNAG® word mark and logo, which is likely to cause confusion, or to cause mistake, or deception, as to Defendants' affiliation with Plaintiffs, and have caused and are likely to cause confusion, or to cause mistake, or deception, to the effect that Plaintiff sponsors, approves or endorses Defendants' golf course and/or golf lessons.

64.     Defendants ongoing conduct, as alleged in this Complaint, is likely to cause confusion and constitutes trademark infringement in violation of 15 U.S.C. §1114(1)(a).

65.     Defendants' conduct is considered willful and irreparable harm and injury to Plaintiff is imminent and ongoing as a result of Defendants' conduct, such that a permanent injunction is warranted.

66.     Plaintiff has no adequate remedy at law.

WHEREFORE Plaintiff respectfully demands:

(a)     that a permanent injunction be entered against Defendants, their officers, agents, servants, employees, attorneys, confederates and all persons in active concert or participation with them be enjoined and restrained perpetually from using the SNAG® word mark or logo in conjunction with advertising or offering of goods or services in any manner likely to cause confusion, to cause mistake, or to deceive by specifically taking down all reference to a SNAG® golf course and from using the SNAG® logo in any manner whatsoever; and

17

(b)      that the Court enter a judgment for an award of compensatory damages, exemplary damages, attorney's fees and costs.

## Count IV
## (False Designation of Origin)

67.      Plaintiff, SNAG® hereby adopts and re-alleges paragraphs 1 through 41 above fully and completely as if set forth herein.

68.      Section 43(a) of the Lanham Act provides in pertinent part that "any person who, on or in connection with any goods or services…..uses in commerce any word, term, name, symbol…or any false designation of origin…..which is likely to cause confusion or to cause mistake, or to deceive as to affiliation….or as to origin, sponsorship, or approval or goods [or' services….shall be liable in a civil action."

69.      Defendant, HOTR through the direction, control and with the actual knowledge of Defendant, MR. GREEN, marketed, promoted and sold its golf lesson services through use of the SNAG® word mark and logo, constituting a false designation of origin that cause and is likely to cause confusion, or to cause mistake, or deception, as to Defendants' affiliation with Plaintiffs, and have caused and are likely to cause confusion, or to cause mistake, or deception, to the effect that Plaintiff sponsors, approves or endorses Defendants' golf course and/or golf lessons.

70.      Defendants ongoing conduct, as alleged in this Complaint, is likely to cause confusion and constitutes a false designation of origin in violation of 15 U.S.C. §1125(a).

71.      Defendants' conduct is considered willful and irreparable harm and injury to Plaintiff is imminent and ongoing as a result of Defendants' conduct, such that a permanent injunction is warranted.

72.     Plaintiff has no adequate remedy at law.

WHEREFORE Plaintiff respectfully demands:

(a)     that a permanent injunction be entered against Defendants, their officers, agents, servants, employees, attorneys, confederates and all persons in active concert or participation with them be enjoined and restrained perpetually from using the SNAG® word mark or logo in conjunction with advertising or offering of goods or services in any manner likely to cause confusion, to cause mistake, or to deceive by specifically taking down all reference to a SNAG® golf course and from using the SNAG® logo in any manner whatsoever; and

(b)     that the Court enter a judgment for an award of compensatory damages, exemplary damages, attorney's fees and costs.

## Jury Trial Demanded

Plaintiff, SNAG, INC. hereby demands trial by jury on all issues so triable.

DATED this 28th day of February, 2013.

Respectfully submitted,

BEUSSE WOLTER SANKS
        MORA & MAIRE, P.A.
390 North Orange Avenue
Suite 2500
Orlando, Florida 32801
Telephone: (407) 926-7700
Facsimile:   (407) 926-7720
Email: jbeusse@cfl.rr.com.com
Email: adavis@iplawfl.com
Attorneys for Plaintiffs

By:     /s/ Jackson O. Brownlee_____
        Jackson O. Brownlee

19

Florida Bar No.: 009581
James H. Beusse
Florida Bar No.: 471364
Amber N. Davis
Florida Bar No.: 0026628

*&JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| SNAG, INC., a Florida corporation | JON P. GREEN and HOME ON THE RANGE, INC., a CA corporation ➕ |
| **(b)**  County of Residence of First Listed Plaintiff  Hillsborough<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED. |
| **(c)**  Attorney's (Firm Name, Address, and Telephone Number)<br>James H. Beusse, Esquire and Amber N. Davis, Esquire<br>Beusse Wolter Sanks Mora & Maire, P.A.<br>390 N. Orange Avenue, Suite 2500, Orlando, Florida 32801 | Attorneys (If Known) |

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☑ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

| II.  BASIS OF JURISDICTION  (Place an "X" in One Box Only) | III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) |
|---|---|

II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☑ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus-Alien Detainee<br>☐ 465 Other Immigration Actions | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

| V.  ORIGIN  (Place an "X" in One Box Only) | | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|
| ☑ 1  Original Proceeding | ☐ 2  Removed from State Court | ☐ 3  Re-filed- (see VI below) | ☐ 4  Reinstated or Reopened | ☐ 5  Transferred from another district (specify) | ☐ 6  Multidistrict Litigation   ☐ 7 | |

| VI.  RELATED/RE-FILED CASE(S). | (See instructions second page): | a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO | |
|---|---|---|---|
| | | JUDGE | DOCKET NUMBER |

**VII.  CAUSE OF ACTION**  Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

§32 of the Lanham Act, 15 U.S.C. §1114, false designation or origin under §43(a) of the Lanham Act, 15 U.S.C. §1125(a) as well as defamation and libel per se ➕

LENGTH OF TRIAL via  3  days estimated (for both sides to try entire case)

| VIII.  REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:  ☑ Yes   ☐ No |
|---|---|---|---|

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  2/28/13

FOR OFFICE USE ONLY

AMOUNT          RECEIPT #          IFP

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                          *Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: